UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | 1:08-cr-0125 OWW |
| | ) | |
| Plaintiff, | ) | FINDINGS OF FACT, |
| | ) | CONCLUSIONS OF LAW AND |
| v. | ) | ORDER GRANTING THE |
| | ) | GOVERNMENT'S MOTION TO |
| PAUL VALLES, | ) | REVOKE MAGISTRATE JUDGE'S |
| | ) | PRETRIAL RELEASE ORDER |
| Defendant. | ) | |
| | ) | |
| _____ | ) | |

        This matter is before the Court on a motion brought by the
United States of America to revoke the Magistrate Judge's order
releasing the defendant on his own recognizance and to impose
pretrial detention.

                        PROCEDURAL HISTORY

        The defendant was charged by indictment returned on April
24, 2008, with being a felon in possession of a firearm, in
violation of 18 U.S.C. § 922(g)(1).

        On May 19, 2008, the defendant made his initial appearance
before the U.S. Magistrate Judge.  The defendant requested that
the matter be continued so that retained counsel could appear.
The defendant was ordered temporarily detained, and the matter
was continued to May 21, 2008.  On May 21, 2008, the defendant

1

1  appeared, represented by his counsel, Peter Cabbiness.  The

2  defendant was arraigned on the indictment and a detention hearing

3  was held.  The government moved for pretrial detention under the

4  Bail Reform Act of 1984, 18 U.S.C. §§ 3142(e), (f), and (g)

5  (2006), which, upon motion of the government in a case that

6  involves "any felony that is not otherwise a crime of violence .

7  . . that involves the possession or use of a firearm . . .,"

8  requires a hearing to determine whether any condition or

9  combination of conditions will reasonably assure the appearance

10 of the defendant and the safety of any other person and the

11 community.  18 U.S.C. §§ 3142(f)(1)(E) and (g).  Over the

12 government's objection, the Magistrate Judge ordered the

13 defendant released on his own recognizance.

14      The government sought and obtained an immediate stay of the

15 Magistrate Judge's order and filed a motion to revoke the release

16 moving the Court for a hearing pursuant to 18 U.S.C. § 3145.

17 This Court held a hearing on the matter on May 27, 2008.

18                          STANDARD OF REVIEW

19      The district court may review the release order of the

20 magistrate upon the government's filing of a motion for

21 revocation of the release order.  18 U.S.C. § 3145(a).  The

22 district court is required to review the magistrate's order de

23 novo.  *United States v. Koenig*, 912 F.2d 1190, 1193 (9th Cir.

24 1990).  The ultimate determination of the propriety of detention

25 is to be decided without deference to the magistrate's ultimate

26 conclusion or factual determinations.  *Id.*

27                          FINDINGS OF FACT

28      The government's proof established by clear and convincing

                                  2

1   evidence that:

2       1.    the defendant is a member of the Fifth Street Bulldog
3   criminal street gang;

4       2.    he was at the City Lights Bar in Fresno, California, on
5   April 16, 2008, with two other Bulldog gang members, Filiberto
6   Lopez, Jr. and Daniel Renteria;

7       3.    while there, another patron, S. Hernandez, called the
8   defendant and his associates "assholes;"

9       4.    a bouncer and the bartender asked Hernandez to leave;

10      5.    Hernandez left the bar with R. Lopez;

11      6.    once outside, F. Lopez and Renteria began fighting with
12  Hernandez;

13      7.    R. Lopez saw the two fighting with Hernandez and pulled
14  F. Lopez off of him;

15      8.    F. Lopez then began fighting with R. Lopez;

16      9.    F. Lopez and R. Lopez fell to the ground, and while R.
17  Lopez was on the ground, the defendant kicked and punched R.
18  Lopez;

19      10.   R. Lopez felt a warm liquid coming from his stomach,
20  saw blood and yelled to Hernandez that he had been stabbed;

21      11.   the defendant then went back into the bar, requested a
22  trash can from the bartender, placed a loaded handgun in the
23  trash can and returned it to the bartender;

24      12.   police seized the firearm from the trash can;

25      13.   defendant was not truthful before the Magistrate Judge
26  as he denied kicking or hitting the victim;

27      14.   the defendant has a 1994 conviction for fighting, a
28  1994 conviction for felony burglary and a 1998 conviction for

1  Transportation, etc., of a controlled substance and possession
2  for sale of a controlled substance, and possessed the loaded
3  firearm on April 16, 2008, which was seized from a trash can at
4  the City Lights Bar;

5      15.  the defendant is on probation as a result of a Driving
6  Under the Influence conviction he received in 2006; and

7      16.  the defendant has the following criminal history:

| | | | |
|---|---|---|---|
| 12-3-90 Fresno PD | Theft | No disposition. | |
| 1-19-92 Fresno SO | Burglary | No disposition. | |
| 2-21-94 Fresno PD | Battery | 5-5-94 (M) fighting; 36 mos. probation, 180 days jail. | |
| 3-19-94 Fresno PD | Burglary | 4-19-94 (F) 36 mos. probation, 365 days jail. | |
| 5-1-94 Fresno SO | ADW | No disposition. | |
| 5-29-98 Fresno PD | Possession of controlled substance for sale; transportation of a controlled substance | 2-22-98 (F) 4 years probation. | |
| 3-26-06 | DUI | 5-24-06 36 months probation - to 5-23-09. | |

20      The government proffered R. Lopez's statement in its motion
21  and oral submissions at the hearing.  R. Lopez told police that
22  while he and F. Lopez were on the ground fighting, the defendant
23  joined in and kicked him while he was on the ground.  R. Lopez
24  said that he then felt a warm liquid coming from his stomach and
25  he felt blood.  He then yelled to Hernandez that he had been
26  stabbed.

27      As seen in government's exhibits 1, 3, and 6, still photos
28  from a surveillance video from City Lights Bar, R. Lopez and

4

1    Hernandez were fighting, the defendant then approaches them and
2    kicks R. Lopez while R. Lopez is on the ground, and then is seen
3    standing over R. Lopez with his arm pulled back in a striking
4    motion.  Exhibits 11 and 12 show the defendant back inside the
5    bar with a small trash can in his hands time-stamped after he
6    kicked and struck R. Lopez.

7          The government proffered the defendant's statement in its
8    motion and oral submissions at the hearing.  The defendant
9    admitted that he possessed the firearm retrieved from the trash
10   can.  He said that he carried the firearm for protection because
11   he had been shot 5 times several years ago and didn't want it to
12   happen again.  He admitted that he was a Fifth Street Bulldog
13   gang member.  Defendant was on court probation for DUI at the
14   time of this crime.

15         The government presented evidence provided to the pretrial
16   services officer by way of proffer as well.  The defendant is a
17   lifelong resident of Fresno, California and has numerous
18   relatives that live in Fresno.  The defendant has worked for RJ
19   Distributing, a company owned by the defendant's father-in-law,
20   for seven years.  He works there three to four days per week.
21   His wife and son receive $600 per month in public assistance and
22   $331 in food stamps.  He is $55,000 in arrears on child support.
23   The defendant takes anti-anxiety medication.  He also consumes
24   alcohol every other day to every two days.  He occasionally
25   ingests cocaine, the last time being "one line" approximately one
26   month prior to his arrest.  The defendant's in-laws are willing
27   to post bond, and report approximately $40,000 in equity in their
28   home, based on a two year old appraisal which the Court finds to

1  be inaccurate, based on the decline in residential property
2  values in Fresno, California.  The defendant's grandmother-in-law
3  also is willing to post her home as bond, and estimates the
4  equity at $210,000.

5       In addition to the defendant's admission that he was a Fifth
6  Street Bulldog gang member, the government further proffered
7  evidence in its motion and by oral submission at the hearing that
8  he has several tattoos indicative of Bulldog membership,
9  including dog paws on his abdomen and a bulldog face on his left
10 shoulder.  Moreover, he claimed affiliation with the Fifth Street
11 Bulldog gang upon classification at Fresno County Jail, and has
12 been validated as a Bulldog gang member.  Filiberto Lopez is on
13 parole, and parole identified him as being a Bulldog gang member.
14 Additionally, F. Lopez previously admitted to Clovis Police
15 Department Officers that he was "jumped into" the Bulldog gang
16 when he was 13 years old.  He has a bulldog tattoo on his hand,
17 along with other tattoos that associate him with the Bulldog
18 criminal street gang.  Renteria admitted to Fresno Sheriff's
19 Officers that he is a Bulldog gang member.  He too has a gang-
20 related tattoo, and has been validated as a Bulldog gang member.

21      Having been afforded the opportunity, the only evidence the
22 defendant presented at the *de novo* hearing on May 27, 2008, was
23 his statement that he worked 4 to 5 days per week.  His attorney
24 also admitted that defendant is on probation for a 2006 Driving
25 Under the Influence offense conviction.  At the hearing,
26 defendant argued that the defendant was not a flight risk or a
27 danger to the community and that the Court should follow the
28 pretrial services officer's recommendation for release on the

1  defendant's own recognizance.

2      At the conclusion of the hearing, the Court made oral
3  findings as required by § 3142(f)(2)(B) and (g) and now makes the
4  written findings called for by § 3142(i).  For the reasons set
5  forth in the evidentiary hearing record and the supplemental
6  findings of fact and conclusions of law made in writing above and
7  below, it has been established by clear and convincing evidence,
8  based upon uncontested witness statements; photographs obtained
9  from video surveillance; the defendant's unobjected-to admission
10  that he was in possession of a firearm on the night in question;
11  his lack of credibility at the first detention hearing; his
12  continuing use of controlled substances; and validated active
13  street gang membership and participation; there is no condition
14  or combination of conditions that will reasonably assure the
15  safety of any other person and the community.

16                          CONCLUSIONS OF LAW

17      The Bail Reform Act mandates the release of a person pending
18  trial unless the Court "finds that no condition or combination of
19  conditions will reasonably assure the appearance of the person as
20  required and the safety of any other person and the community."
21  18 U.S.C. § 3142(f).  No rebuttable presumption applies in this
22  case as the ten (10) year maximum penalty is not mandatory.

23      In *United States v. Hir*, 517 F.3d 1081, 1087 (9th Cir.
24  2008), the court addressed the meaning of the term "community."
25  In *Hir*, the court explained that community means any community,
26  providing the example that "[i]t would likewise be absurd to hold
27  that a court in Florida must ignore the danger that an individual
28  accused of defrauding susceptible persons in that state may pose

to residents of Oregon." *Id.* at p. 1088.  The district judge may determine the threat a defendant poses to any community, whether in the United States or abroad.  Here, the relevant community is the Eastern District of California and specifically, the city of Fresno, where the Defendant has been a validated member of a criminal street gang, used drugs, and engaged in a fight with the assistance of his gang-associates.

It is well recognized that a pretrial detention order must be careful to ensure that the "order is consistent with the defendant's constitutional and statutory rights." *United States v. Townsend*, 897 F.2d 989, 994 (9th Cir. 1990).  "[T]he Fifth and Eighth Amendment prohibitions of deprivations of liberty without due process and of excessive bail require careful review of pretrial detention orders to ensure that the statutory mandate has been respected." *United States v. Motamedi*, 767 F.2d 1403, 1405 (9th Cir. 1985).

As observed by Judge Reinhardt in the *Hir* case, "The current statute, the Bail Reform Act of 1984 was enacted, in large part, to address growing concern that dangerous individuals were committing crimes while released on bail." *Hir* at p. 1089.  In passing the 1984 Act, Congress criticized the earlier statute for "fail[ing] to grant the Courts . . . the authority to deny release to those defendants who pose an especially grave risk to the safety of the community." *Id.* at 1089.  "Congress explained that the 'broad base of support for giving judges the authority to weigh risks to community safety and pretrial release decisions is a reflection of the deep public concern, which the Committee shares, about the growing problem of crimes committed by persons

**8**

1   on release.'"  *Hir, id.* at p. 1089, *quoting*, 1984 U.S.C.C.A.N.
2   3182, 3188; S.Rep. Nos. 98-225, at 5 (1983).

3       Under § 3142(e) the judicial officer shall issue a detention
4   order pending trial if no condition or combination of conditions
5   will reasonably assure (a) the appearance of the person as
6   required and (b) the safety of any other person and the
7   community.  The government bears the burden of showing a danger
8   to the community by clear and convincing evidence.  *United States*
9   *v. Gebro, supra*, 948 F.2d at 1121; citing *Motamedi*, 767 F.2d at
10  1406-07.

11      Section 3142(g) specifies the factors the court must
12  consider to determine whether there are conditions of release
13  that will reasonably assure the defendant's appearance and the
14  community's safety:  (1) the nature and seriousness of the
15  offense(s) charged; (2) the weight of the evidence against the
16  defendant; (3) the defendant's character, physical and mental
17  condition, family and community ties, past conduct, history
18  relating to drug and alcohol abuse, and criminal history; and (4)
19  the nature and seriousness of the danger to any person in the
20  community that would be posed by the defendant's release.  *Gebro*,
21  948 F.2d at 1121.

22      As the Ninth Circuit specifically recognizes, conditions of
23  release depend largely on the defendant's good faith - or lack of
24  it.  If conditions can too easily be circumvented or manipulated,
25  they are not effective.  *See, Hir* at p. 1093, *quoting, United*
26  *States v. Tortora*, 922 F.2d 880, 887, fn.11 (1st Cir. 1990).
27  Where conditions of release depend upon good faith compliance and
28  trust where, as here, a defendant is an admitted drug user and

1    alcohol abuser, a validated member of a criminal street gang who

2    in concert with two of his gang associates became involved in a

3    violent fight while at a bar and while in possession of a loaded

4    handgun after having been convicted of a felony, has a criminal

5    history indicative of a propensity for violence and disregard for

6    the law, and was on probation for an alcohol-related offense at

7    the time of the offense, there is an unacceptably high risk that

8    the defendant will not comply in good faith nor can he be trusted

9    to comply with proposed conditions, or any other combination of

10   release conditions imposed upon him.  *See, Hir* at 1093.

11

12   **Application of the § 3142(g) Factors**

13       An evidentiary hearing has been held under 18 U.S.C.

14   § 3142(f)(2)(B).

15       **FIRST 3142(g) FACTOR**: the nature and seriousness of the

16   offense charged.  Here, the defendant is charged with being a

17   felon in possession of a firearm in violation of 18 U.S.C.

18   § 922(g)(1).  This offense entails an incident involving a

19   violent fight between the defendant, his associate and a bar

20   patron during which the patron was stabbed and seriously injured.

21   During the fight, the defendant had a loaded firearm in his

22   pocket, which he threw in a trash can to avoid detection.

23       **SECOND 3142(g) FACTOR**:  the weight of the evidence against

24   the defendant.  Here, the weight of the evidence against this

25   defendant is strong.  The government proffered evidence that

26   defendant was identified by R. Lopez as being involved in the

27   physical altercation with him.  Additionally, the government

28   presented Exhibits 1-13 which are photographs taken from the

1   surveillance video from the City Lights Bar on the night of the

2   incident.  In the photographs, the defendant is seen involved in

3   the fight, and they confirm R. Lopez's report that Valles kicked

4   him while he was on the ground.  Additionally, the government

5   proffered the statement of the bartender, who reported that the

6   defendant requested a trash can and then returned it to the

7   bartender with a firearm in it.  Moreover, the government

8   proffered the defendant's admission to possessing the firearm for

9   protection because he was shot several years ago in a drive-by

10  shooting and didn't want it to happen again.  Exhibits 11 and 12

11  depict the defendant with a trash can in his hand while seated at

12  the bar.  The government also proffered the defendant's prior

13  felony convictions from 1994 for burglary and 1998 for possession

14  of a controlled substance for sales.  Thus the weight of the

15  evidence is extremely strong.  This factor is probative under

16  § 3142(g)(2) and is a factor which favors the defendant's

17  detention.

18      **THIRD 3142(g) FACTOR**: the defendant's history, character,

19  mental condition, family and community ties, past conduct,

20  history related to drug abuse, and criminal history.

21      The defendant's prior criminal history includes a conviction

22  for fighting in 1994 for which he received a sentence of 36

23  months of probation and 180 days in jail, for burglary (felony)

24  in 1994 for which he received a sentence of 36 months probation

25  and 365 days in jail, a charge for assault with a deadly weapon

26  in 1994, a conviction for possession of a controlled substance

27  for sale and transportation of a controlled substance in 1998 for

28  which he received a sentence of 4 years state imprisonment, and a

1   conviction for driving under the influence of alcohol in 2006 for

2   which he received a 36 month sentence of probation to expire on

3   May 23, 2009.  Additionally, the defendant was found to be in

4   violation of his parole and ordered to finish his term of

5   imprisonment for the 1998 drug trafficking convictions in 2000.

6        While the defendant reports having been employed for the

7   past 7 years at his father-in-law's business, he only works 3-4

8   days per week.  Moreover, his wife and child are on public

9   assistance, and the defendant is $55,000 in arrears on child

10  support.  Nonetheless, the defendant was out at a bar drinking

11  with his friends, reports drinking every other day to every two

12  days, and also ingesting cocaine on occasion.  These factors are

13  probative under § 3142(g)(3)(A) and are all factors which favor

14  the defendant's detention.

15       FOURTH 3142(g) FACTOR: the nature and seriousness of the

16  danger to any person or to the community posed by the defendant's

17  release.  Here, the defendant presents a significant danger to

18  the community.  He is a validated and admitted member of a

19  criminal street gang.  There can be no doubt that the actions of

20  criminal street gangs have long caused a tremendous threat to the

21  citizens of Fresno and to any innocent bystander who is caught up

22  in the middle of any gang-related criminal activity.  In this

23  case, the defendant, with the help of his associates, who are

24  also members of a criminal street gang, the Fifth Street

25  Bulldogs, engaged in a fight during which the defendant had a gun

26  in his possession, and that resulted in serious injury to one

27  victim.  The defendant's prior convictions for fighting, burglary

28  and drug trafficking are all indicative of a propensity for

violence.  Additionally, the defendant claims to suffer from
anxiety as a result of being shot previously, and as such takes
anti-anxiety medication.  He claimed the present need to carry
the instant firearm for protection.  He also reported that he
drinks alcoholic beverages every day to every other day, has a
DUI conviction from 2006, and uses cocaine.  This is an extremely
dangerous mix highlighted by the events that led to the instant
charges.  Thus, the Fourth factor also favors detention.

THE COURT FINDS, because of the defendant's unstable
behavior, his propensity for violence, and his active membership
in a criminal street gang, there is no set of conditions that
could be fashioned to protect the community because all such
conditions require the compliance of the defendant, based on
trust.  Moreover, the defendant's lack of responsibility for his
own actions and disregard for the welfare of others is even
further exemplified by the fact that his wife and child are on
public assistance, he owes $55,000 in arrears in child support,
yet he was out patronizing a drinking establishment which, again,
led to the instant charges.  Additionally, the defendant was on
probation for an alcohol related offense at the time he committed
the instant offense.

All the statutorily required factors clearly and
convincingly weigh against release.  There are no conditions
which will reasonably assure the safety of the community.

THE COURT FURTHER FINDS that all the clear and convincing
evidence of dangerousness of the defendant to the community is so
great, that the conditions of 18 U.S.C. §§ 3142(e) and (f)(2)(B)
have been established by clear and convincing evidence.  Given

13

that the defendant has an alcohol abuse problem, uses cocaine, has a history of committing crimes indicative of a propensity for violence, was recently involved in an incidence of violence that led to R. Lopez being stabbed, was carrying a loaded firearm on the night in question, and is a member of a criminal street gang, the Fifth Street Bulldogs, there are no conditions or combination of conditions that will ensure the safety of the community or any other person.  For these reasons, pretrial detention does not violate this defendant's Fifth Amendment right to substantive due process.  *See, e.g., United States v. Salerno*, 481 U.S. 739 (1987); *United States v. Walker*, 808 F.2d 1309, 1311 (9th Cir. 1986); *see also, United States v. Hir*, 517 F.3d 1081, 1090-92 (9th Cir. 2008).  The government submits that the proposed conditions are not sufficient inducement for the defendant to comply with conditions of release, nor to ensure that the defendant will not engage in additional criminal conduct.

THE COURT FURTHER FINDS the government has shown by clear and convincing evidence that because the defendant regularly consumes alcohol while taking Paxil for his anxiety, occasionally ingests cocaine, a narcotic controlled substance, while owing $55,000 in arrears for child support and working a job only 3 to 4 days a week, and was not truthful before the Magistrate Judge, cannot be trusted.

## CONCLUSION

For all the reasons stated in the above Findings of Fact and Conclusions of Law, the government's motion to revoke defendant Paul Valles' pretrial release is GRANTED.  The defendant shall remain detained in accordance with the provisions of 18 U.S.C.

§ 3142(i)(2) pending further order of the Court of final disposition of this case.

IT IS SO ORDERED.

Dated:    **May 30, 2008**                              **/s/ Oliver W. Wanger**
                                                        UNITED STATES DISTRICT JUDGE